UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KARIN CARVER,

        Plaintiff,

                                    File No. 1:11-CV-583

v.

                                    HON. ROBERT HOLMES BELL

STATE OF MICHIGAN, DEPARTMENT OF
TECHNOLOGY, MANAGEMENT AND
BUDGET,

        Defendant.

_____/

## **O P I N I O N**

    This matter is before the Court on Defendant State of Michigan, Department of Technology, Management and Budget's ("DTMB") motion for summary judgment on Plaintiff Karin Carver's claim of gender discrimination in violation of Title VII of the Civil Rights Act.  (Dkt. No. 26.)  This suit was originally brought by four plaintiffs alleging age, gender, and race discrimination.  However, on January 4, 2012, the Court issued an opinion and order dismissing the claims of the other plaintiffs, leaving only Carver's gender discrimination claim.  (Dkt. Nos. 15, 16.)  Defendant brought the present summary judgment motion on August 23, 2012.  For the reasons that follow, this motion will be granted.

## I.

    Plaintiff Karin Carver was an employee of the DTMB in a Facility Supervisor 12 position.  (Dkt. No. 5, First Am. Compl. ¶ 20.)  In 2009, the DTMB reorganized because of budget cuts.  (*Id.* at ¶¶ 29-30.)  As part of this reorganization, thirty positions were

eliminated, including all Facility Supervisor 11, 12, and 13 positions. (*Id.* at ¶ 31.) A new position, Facility Supervisor 14, was created with seven positions available. (Dkt. No. 28, Resp. Br. at 5.) Twenty-seven people applied for the Facility Supervisor 14 positions, including Carver. Only three of the applicants were female. (*Id.*)

During her interview for the position, Carver was explaining one of the buildings she had experience managing, when one of the panelists, Deb Gearhart, commented that the building sounded like "Menopause Manor," a comment Carver found offensive. (Dkt. No. 5, First Am. Compl. ¶ 54.) Ultimately, the panel chose seven males to fill the positions. (Dkt. No. 28, Resp. Br. at 6.) Carver has alleged that she was denied the Facility Supervisor 14 position on the basis of her gender.[1]

## II.

The Federal Rules of Civil Procedure require the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

---

[1]Defendant asserts that Carver is raising gender discrimination in connection with the denial of her applications for the Departmental Analyst and Central Control Operator positions as well. However, based on the complaint and Carver's response to the present motion, it appears she is only alleging such discrimination with regard to the Facility Supervisor 14 position. (*See* Dkt. Nos. 5, 28.) In any case, even if Plaintiff was asserting gender discrimination in regard to those positions, the Court would still grant summary judgment to Defendant.

In considering a motion for summary judgment, "the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Martin v. Cincinnati Gas and Elec. Co.*, 561 F.3d 439, 443 (6th Cir. 2009) (citing *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007)).  Nevertheless, the mere existence of a scintilla of evidence in support of a non-movant's position is not sufficient to create a genuine issue of material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Id.*; *see generally Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

### III.

Plaintiff is asserting a claim under Title VII of the Civil Rights Act of 1964, which prohibits employment discrimination based on race, color, religion, sex, and national origin. 42 U.S.C. § 2000e-2.  "Once plaintiffs produce direct evidence of discrimination, the burden shifts to the employer to show that it would have taken the employment action even in the absence of discrimination." *Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711, 719 (6th Cir. 2006).

"Direct evidence is 'evidence that proves the existence of a fact without requiring any inferences.'"  *Id.* (quoting *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004)).  "[W]orkplace remarks furnished as evidence of discrimination [must] be clear, pertinent, and directly related to decision-making personnel or processes in order to

prove discriminatory intent." *Wilson v. Wells Aluminum Corp.*, No. 95-2003, 1997 WL 52921, at *5 (6th Cir. Feb. 7, 1997). "Evidence of discriminatory motives must . . . have some relationship with the employment decision in question; inappropriate but isolated comments that amount to no more than 'stray remarks' in the workplace will not do." *Preston v. Berendsen Fluid Power,* 125 F. Supp. 2d 245, 250-51 (W.D. Mich. 2000) (quoting *Venters v. City of Delphi,* 123 F.3d 956, 973 (7th Cir. 1997)). "[G]eneral, vague, or ambiguous comments do not constitute direct evidence of discrimination because such remarks require a factfinder to draw further inferences to support a finding of discriminatory animus." *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 708-09 (6th Cir. 2008).

Carver contends that she has shown direct evidence of discrimination. She cites the "Menopause Manor" comment made by Gearhart. However, this comment is far from direct evidence. While this comment was made by someone with some control over the hiring process and during an interview, it does not come close to proving that Carver did not receive the position on account of her gender. First, the comment was not made about Carver, nor did it relate to the interview process or decision-making process. It was made about the Secretary of State office building, a building that Carver had overseen in the course of her career as a Facility Supervisor 12. At most, it can be taken as referring to a group of workers at that building who made complaints, a group that does not include Carver. Second, Gearhart was not the sole decision-maker. Instead, the panel of four people, including Gearhart, had to reach a consensus decision on each interviewee. Third, the phrase

4

"Menopause Manor" is vague and ambiguous, and not clearly indicative of discriminatory animus towards women. Thus, while the comment was made in poor taste, an inference is required to reach the conclusion that it is evidence of discrimination. It is exactly the type of "inappropriate but isolated comment[]" that is insufficient to constitute direct evidence. *Preston*, 125 F. Supp. 2d at 250-51.

In the absence of direct evidence, the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), applies. Plaintiff must first establish a prima facie case of employment discrimination by showing that (1) she was a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) she was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees. *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2007). If these factors are shown, a presumption of discrimination applies, and the burden shifts to the defendant to put forth a legitimate, nondiscriminatory reason for the adverse treatment. *Id.* If the defendant puts forth such a reason, then the plaintiff must show that the proffered reason was a pretext for discrimination. *Id.*

Defendant has conceded that Carver made out a prima facie case of gender discrimination under Title VII. (Dkt. No. 27, at 12.) She met the minimum qualifications necessary to apply for the position, she was not awarded the position, and every successful applicant was male. However, Defendant has put forth a legitimate, nondiscriminatory

reason Carver did not receive the position: she was not one of the top seven candidates who interviewed.  Keith Paasch, a member of the interview panel, stated in an affidavit that Carver "did not demonstrate the level of technical knowledge necessary for the position in her interview."  (Dkt. No. 27, Attach. 2, Paasch Aff. ¶ 14.)  The Facility supervisor 14 position required technical knowledge that had not been necessary for the Facility Supervisor 12 position.  Additionally a December 1, 2009, memorandum providing the unanimous conclusions of the panel stated that Carver was not a top candidate because she had "communication problems either understanding the questions or answering them." (Dkt. No. 27, Attach. 2, Memo., Page ID #451.)

These asserted justifications are legitimate, nondiscriminatory reasons for the non-hiring of Carver.  Thus, to survive the summary judgment stage, Carver is required to show that the proffered reasons were a pretext for discrimination.  Pretext can be shown by demonstrating that DTMB's asserted reasons (1) had no basis in fact, (2) did not actually motivate the adverse action, or (3) were insufficient to motivate the adverse action.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).

Plaintiff relies on the second option:

A plaintiff using the second option "admits the factual basis underlying the employer's proffered explanation and further admits that such conduct could motivate dismissal," but "attempts to indict the credibility of his employer's explanation by showing circumstances which tend to prove that an illegal motivation was more likely than that offered by the defendant." *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994).

*Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003).  To satisfy this burden, Plaintiff

first notes that DTMB's human resources department shredded all of the interview notes, allegedly in violation of Michigan Civil Service Regulation 3.04.  This does not show that the asserted justifications for the hiring decision were pretexts for discrimination.

The original plaintiffs, including Carver, first sought relief before the State of Michigan Civil Service Commission.  The Commission denied relief to plaintiffs because it found no evidence of discrimination.  Following a three day hearing on appeal (during which time Carver and her fellow plaintiffs were represented by the same counsel as here), the Hearings Officer concluded that "[t]hese arguments regarding the destruction of the scoring sheets have nothing to do with the issue of race, age, sex and marital status discrimination." (Dkt. No. 27, Attach. 5, at Page ID# 465.)  Additionally, the December 1 memorandum was very thorough in describing why the panel settled on the seven candidates it did and why each of the other candidates was not chosen.  (Dkt. No. 27, Attach. 2, Memo., Page ID #451.) This memorandum was signed by each panel member.  The mere fact that the panel members' interview notes – on which that memorandum was based – were shredded does nothing to show that an illegal motivation for the non-hiring of Carver was more likely than the nondiscriminatory motivations offered by the DTMB in that memorandum.  Plaintiff has offered no evidence that the notes were inconsistent with this memorandum.  Moreover, the notes were destroyed before the original plaintiffs first raised their discrimination claims.

Plaintiff also offers in support the fact that she was denied the Central Control Operator and Departmental Analyst positions as well.  However, that is not evidence of

discrimination. The mere fact that she did not receive different positions within the DTMB adds nothing to the analysis unless Carver can make a showing of discrimination in those decisions. Carver makes no such showing, and, in fact, a female was selected for one of the two open Departmental Analyst positions.

## IV.

Plaintiff's claims are entirely without merit. Plaintiff's entire case hinges on a phrase which clearly did not refer to her and clearly was not direct evidence of discrimination. While the comment was inappropriate, only the thinnest of cases can be made that it is even indirect or circumstantial evidence of gender discrimination, and Plaintiff has no evidence that the legitimate, nondiscriminatory reasons offered for the non-hiring of Carver were pretexts for discrimination.

This same argument was competently reviewed multiple times. First, it was raised before the Michigan Civil Service Commission. After a thorough three day hearing in which testimony was offered and Plaintiff was represented by the same counsel, a decision was rendered in favor of Defendant. (Dkt. No. 9, Ex. 7.) The Hearing Officer found "no evidence to indicate that the panel engaged in discrimination against any of the complainants." (*Id.* at 7.) Upon review, the Technical Hearing Officer agreed. (Dkt. No. 9, Ex. 6.) Plaintiffs attempted to appeal, but both the Employment Relations Board (Dkt. No. 9, Ex. 8) and Civil Service Commission (Dkt. No. 9, Ex. 9) denied the application for leave to appeal because no grounds for granting such leave were shown.

8

Now Plaintiff attempts to bring the same argument in federal court, hoping that this time the result will be different, even though the Hearing Officer, Technical Hearing Officer, Employment Relations Board, and Civil Service Commission all found that Plaintiff presented no evidence of gender discrimination whatsoever.  This matter does not belong in federal court, and counsel, who was present during all the previous stages, should have advised her client that this case lacked merit.  Because there is no genuine issue of material fact, and Defendant is entitled to judgment as a matter of law, Defendant's motion for summary judgment will be granted.

An order will be entered consistent with this opinion.


Dated: <u>November 5, 2012</u>                    <u>/s/ Robert Holmes Bell</u>
                                        ROBERT HOLMES BELL
                                        UNITED STATES DISTRICT JUDGE